UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MARTIN SCHLESINGER | ) | CIVIL ACTION NO.: 2:11-cv-00294 |
| | ) | |
| Plaintiff, | ) | JUDGE: IVAN R. LEMELLE |
| | ) | |
| vs. | ) | |
| | ) | MAGISTRATE: |
| E S & H, INC., TEAM LABOR FORCE, LLC, | ) | JOSEPH C. WILKINSON, JR. |
| O'BRIEN'S RESPONSE MANAGEMENT, | ) | |
| INC., BP AMERICA, INC., AND RAYMOND | ) | JURY TRIAL DEMANDED |
| PITTS, | ) | |
| | ) | |
| Defendants | ) | |

## FIRST AMENDED COMPLAINT

### INTRODUCTION

Plaintiff, Martin Schlesinger ("Plaintiff"), by and through undersigned counsel, files this First Amended Complaint against Defendants, E S & H, Inc., Team Labor Force, LLC, O'Brien's Response Management, Inc., BP America, Inc., and Raymond Pitts, (collectively "Defendants") with said First Amended Complaint filed as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) and states as follows:

### JURISDICTION

1.     Jurisdiction in this Court is proper as the claims are brought pursuant to the Fair Labor Standards Act, as amended (29 U.S.C. §201, *et seq.*, hereinafter called the "FLSA") to recover unpaid back wages, an additional equal amount as liquidated damages, and reasonable

attorney's fees and costs.

2.     The jurisdiction of the Court over this controversy is based upon 29 U.S.C. §216(b). Plaintiff also invokes supplemental jurisdiction of this court over Plaintiff's state law claims against Defendant pursuant to 28 U.S.C. §1367, as the common law claims form part of the same case or controversy arising from violations of Louisiana and Mississippi statutes.

## VENUE

3.     Venue is proper in the Eastern District of Louisiana under 28 U.S.C. § 1391 because it is where Defendants are subject to personal jurisdiction, where Defendants do business in the State of Louisiana, and where a substantial part of the events or omissions giving rise to the claim occurred.

## PARTIES

4.     At all times material hereto, Plaintiff was, and continues to be a resident of LaPlace, Louisiana.

5.     Upon information and belief, Defendant, E S & H, Inc. (hereinafter "ES&H") is a Louisiana corporation doing business in the State of Louisiana with its offices in Houma, Louisiana.  For the purposes of this litigation, Defendant ES&H was engaged in the business of assisting in the oil spill clean-up efforts following the Deepwater Horizon oil spill which began on April 20, 2010.

6.     Upon information and belief, Defendant, Team Labor Force, LLC, (hereinafter "TLF")  is a Louisiana company doing business in the State of Louisiana with its offices in Houma, Louisiana.  For the purposes of this litigation, Defendant TLF was engaged in the business of oil spill clean up.  For all purposes herein TFL and ES&H are interchangeable as Defendants.

7.    Upon information and belief, Defendant, O'Brien's Response Management, Inc. (hereinafter "O'Brien's") is a Louisiana corporation doing business in the State of Louisiana with its offices in Slidell, Louisiana.  For the purposes of this litigation, Defendant O'Brien's was engaged in the business of assisting in the oil spill clean-up efforts following the Deepwater Horizon oil spill which began on April 20, 2010.

8.    Upon information and belief, Defendant, BP America, Inc., (hereinafter "BP") is a Delaware corporation authorized to do, and doing business throughout the State of Louisiana. For the purposes of this litigation, Defendant BP was engaged in the business of crude oil production and resultant clean-up efforts following the Deepwater Horizon oil spill which began on April 20, 2010.

9.    At all times relevant to this action, Raymond Pitts (hereinafter "Pitts") was a resident of the State of Alabama, an individual initially retained for employment by O'Brien's and that by virtue of their regularly exercised authority, both O'Brien's and BP are employers of Pitts.   For the purposes of this litigation, Defendant O'Brien's was engaged in the business of assisting in the oil spill clean-up efforts following the Deepwater Horizon oil spill which began on April 20, 2010.

10.    By virtue of requiring and commanding Plaintiff to act directly in the interest of all Defendants, all Defendants have exhibited the requisite control to make them employers of Plaintiff for all purposes under state law and as set forth in 29 U.S.C. 201 *et. seq.*  Each of the Defendants was thus an employer of Plaintiff for the following reasons:

10.A.    Defendant ES&H is an employer of Plaintiff because it originally retained Plaintiff to become an employee of all Defendants to work directly for BP in a command structure that placed BP, O'Brien's and ESH in direct control of Plaintiff and other employees

participating in clean-up efforts in Pascagoula, Mississippi.  All personnel, including Plaintiff, that were employees brought to the Pascagoula location by ES&H were bound by a command structure set forth by BP so that Plaintiff and other employees were required to take orders and otherwise be controlled by BP, O'Brien's and ES&H.  ES&H furthermore controlled the distribution of pay to Plaintiff.  At relevant times herein, ES&H made decisions that directly controlled Plaintiff's employment status with all Defendants. At relevant times herein, ES&H made decisions that directly controlled Plaintiff's job, work efforts and hours worked in Pascagoula, Mississippi.

10.B.     Defendant TLF is an employer of Plaintiff because it is an entity that is indistinguishable from ES&H.  ES&H and TLF share the same personnel, same physical facilities, maintain close ties between the entities, and share funds attributed to each.  Most notably, ES&H and TLF shared Plaintiff as an employee interchangeably at approximately the same time and both had unified input into his hiring and termination from both entities.  Both entities are respectively agents for the other.

10.C.     Defendant O'Brien's is an employer of Plaintiff because it partook in a command structure that placed BP and O'Brien's in direct control of all employees, including Plaintiff, participating in clean-up efforts in Pascagoula, Mississippi.  Plaintiff was informed by O'Brien's that as a worker brought to the Pascagoula location by ES&H, Plaintiff was bound by a command structure set forth by BP to take orders and otherwise be controlled by BP, O'Brien's and ES&H.  At relevant times herein, O'Brien's made decisions that directly controlled Plaintiff's employment status with all Defendants. At relevant times herein, O'Brien's made decisions that directly controlled Plaintiff's ability to access the work site in Pascagoula, Mississippi. At relevant times herein, O'Brien's made decisions that directly controlled

4

Plaintiff's job, work efforts and hours worked in Pascagoula, Mississippi.

10.D.    Defendant BP is an employer of Plaintiff because it established a command structure and rules of protocol for the sole purpose of placing Plaintiff under the control of all Defendants herein.   BP employed, controlled and had determination of the changing and/or continuance of the work status of Plaintiff and similarly situated employees.  BP established this protocol explicitly in an effort to share employees, including Plaintiff, so that he and others could effectively work toward the goal of the oil spill clean-up efforts following the Deepwater Horizon oil spill which began on April 20, 2010. At relevant times herein, BP made decisions that directly controlled Plaintiff's employment status with all Defendants. At relevant times herein, BP made decisions that directly controlled Plaintiff's ability to access the work site in Pascagoula, Mississippi. At relevant times herein, BP made decisions that directly controlled Plaintiff's job, work efforts and hours worked in Pascagoula, Mississippi. At relevant times herein, BP issued workplace policies that were to be followed by Plaintiff and similarly situated employees.

10.E.    Defendant Pitts is an employer of Plaintiff because he was a high-ranking agent of O'Brien's who was a direct hire brought to the work site in Pascagoula, Mississippi who exerted the same control over Plaintiff as Defendant O'Brien's as an agent of BP and O'Brien's. At relevant times herein, Pitts submitted to and partook in the chain of command and operational protocol established by BP so that all Defendants could exercise control over Plaintiff as an employee of all Defendants. At relevant times herein, Pitts made decisions that directly controlled Plaintiff's employment status with all Defendants. At relevant times herein, Pitts made decisions that directly controlled Plaintiff's ability to access the work site in Pascagoula, Mississippi. At relevant times herein, Pitts made decisions that directly controlled Plaintiff's job,

work efforts and hours worked in Pascagoula, Mississippi.

11.   At all times material hereto, Plaintiff was "engaged in commerce" within the meaning of §6 and §7 of the FLSA, and subject to the individual coverage of the FLSA.

12.   At all times material hereto, Plaintiff was "engaged in the production of goods" for commerce within the meaning of §6 and §7 of the FLSA, and subject to the individual coverage of the FLSA.

13.   At all times material hereto, Plaintiff was an "employee" of all Defendants within the meaning of FLSA because each had the ability to control Plaintiff's employment status at the job site and in fact all Defendants did ultimately collude together to make the decision to wrongfully terminate him.

14.   The Defendants each had a part in supervising the extent and nature of Plaintiff's work at the job site and on a daily basis would have open meetings in which representatives of Defendant companies would confer to give out job assignments and institute policies with regard to the spill clean up and activities incidental to same.

15.   Each Defendant had individual control over whether the Plaintiff was to spend time working at the job site, and because Plaintiff was working at an hourly rate, each could control his rate of pay.

16.   Each Defendant had an interwoven network of record exchange regarding its shared employees.

17.   Each Defendant had input and command over shared employees' responsibilities at the job site, including Plaintiff.

18.   Each Defendant had a hand in issuing Plaintiff credentials that allowed him to work at the job location.

19.  Each Defendant partook in the institution and distribution of a non-harassment policy, under which they owed a duty to Plaintiff.

20.  At all times material hereto O'Brien's and its direct hires at the Pascagoula job site were agents of BP with the authority, both actual and apparent, to act on its behalf.

21. At all times material hereto Pitts was an employee and agent of both BP and O'Brien's with the authority, both actual and apparent, to act on their behalves, thus making BP and O'Brien's responsible for his acts pursuant to the theory of *respondeat superior.*

22. At all times material hereto ES&H and its direct hires at the Pascagoula job site were agents of BP and O'Brien's with the authority, both actual and apparent, to act on their behalf.

23.  Thus, at all times material hereto, Plaintiff was a non-exempt employee for the purposes of the FLSA.

24.  Defendants were, and continue to be, "employers" within the meaning of FLSA and applicable state laws.

25.  Based upon information and belief, the annual gross revenue of Defendants was in excess of $500,000.00 per annum during the relevant time periods.

26.  At all times material hereto, the work performed by the Plaintiff was directly essential to the business performed by all Defendants.

## STATEMENT OF FACTS

27.  On or about May of 2010, Defendants through its agent, Defendant ES&H, hired Plaintiff in Houma, Louisiana. Plaintiff's duties primarily involved supervising worker safety at the Pascagoula, Mississippi, Deepwater Horizon oil spill clean-up command center.

28.  Plaintiff learned that the command structure set forth by BP at the job site location was that although all Defendants retained the right to direct and control all of Plaintiff's work,

7

BP had hired O'Brien's as its direct agent to manage the clean-up effort at the location,

29.    O'Brien's and its direct hires, including Pitts, were responsible for controlling the oil spill clean-up work, and thus necessarily were required to manage every aspect of controlling personnel, including Plaintiff at the Pascagoula, Mississippi location.

30.    ES&H was brought by BP to the job site to act in a supporting role that was subservient to O'Brien's charge of overseeing the clean-up and in turn ES&H brought Plaintiff to the job site in order to provide safety and security at the job site.

31.    Because of this command structure, at all times Plaintiff worked at the job site, his employment duties made him the employee of all the all Defendants herein: BP, ES&H/TLF and O'Brien's with Pitts acting directly on behalf of O'Brien's as its direct hire, agent and employee.

32.    At various material times hereto, on approximately a weekly basis, Plaintiff worked for Defendants in excess of forty (40) hours within a workweek.

33.    From at least May 1, 2010 and continuing until July, 2010 Defendants failed to compensate Plaintiff at a rate of one and one-half times Plaintiff's regular rate for all hours worked in excess of forty (40) hours in a single work week. Plaintiff should be compensated at the rate of one and one-half times Plaintiff's regular rate for those hours that Plaintiff worked in excess of forty (40) hours per week as required by the FLSA.

34.    Defendants have violated Title 29 U.S.C. §207 from at least May 1, 2010 and continuing until July 2010, in that:

34.A. Plaintiff worked in excess of forty (40) hours per week for the period of employment with Defendants;

34.B. No payments, and provisions for payment, have been made by Defendants to properly compensate Plaintiff at the statutory rate of one and one-half times Plaintiff's regular

rate for those hours worked in excess of forty (40) hours per work week as provided by the FLSA; and

      34.C. Defendants have failed to maintain proper time records as mandated by the FLSA.

    35.  In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

    36.    On July 3, 2010 Plaintiff attended a series of meetings wherein he received instructions that he was subject to and was made to follow BP's new "Non-Harassment" policy for all workers in Pascagoula, Mississippi.  BP had chosen to exercise its control over all personnel at the job site by subjecting them to a code of conduct that regulated their social interactions, their job performance, their speech, their handling of employee personal information, and BP thus exhibited the control over all personnel at the job including direct hires of BP, O'Brien's and ES&H.

    37.    O'Brien's and Raymond Pitts along with other direct hires of BP were tasked with enforcing this policy, and thus exhibited the control over all personnel at the job site that rose to the level of control exemplified in an employee-employer relationship of all personnel at the job site, including Plaintiff.

    38.  Among the proclamations in the subject policy, BP demanded a prohibition on, among other activities, "creating a hostile or intimidating work environment."

    39.   Strikingly, immediately following that meeting in which the policy was implemented, Defendant Pitts, acting on behalf of BP and O'Brien's approached Plaintiff and intimidated Plaintiff for the benefit of BP and O'Brien's.

40.     Plaintiff's role at the job site which had been set forth by all Defendants was to ensure the safety and health of the workers at the job site by primarily overseeing compliance with state and federal laws, including OSHA regulations.

41.     In carrying out those job duties Plaintiff was directly instructed by OSHA officials to ensure the sanitary conditions and health of the Defendants' workers who were placed on Horn Island, off the coast of Mississippi.

42.     Specifically, Defendants was instructed by OSHA representatives to place mobile toilet facilities on Horn Island.

43.     Plaintiff, after having begun implementing this plan, was confronted by Pitts who became enraged when he believed that this particular act of distributing toilet facilities interfered with his and the other Defendant's ultimate goal of participating in the oil spill clean-up.

44.     Thus, following the safety meeting which BP, O'Brien's and ES&H employees had attended, Pitts followed Plaintiff to the breezeway of a Pascagoula hotel and committed an assault upon him, gesturing threateningly and screaming, threats that created in Plaintiff a reasonable apprehension of bodily harm or offensive contact.

45.     The unprovoked screaming and profanity-laced tirade against Plaintiff was specifically on the subject of Plaintiff's management of worker safety and enforcement of OSHA regulations at this job site.

46.     In carrying out the attack, Mr. Pitts aggressively approached Plaintiff and stated to him that Plaintiff needed to keep his "fucking safety business out of his business," referring to the operational aspects of the oil spill clean-up.

47.     Plaintiff inquired as to what Mr. Pitts was referring to and in response, Mr. Pitts screamed "All you fucking safety people need to stay out of my business.  We ain't going to pull no fucking port o' cans on that island.  Stay out of my business!"

48.     Following this statement, the belligerent outburst continued when Mr. Pitts put his index finger inches away from Plaintiff's face and continued his verbal assault, including threatening to "get rid of" Mr. Schlesinger, in reference to his power to terminate Plaintiff's employment or otherwise control his ability to work on the premises.

49.     This assault was precipitated solely by Pitts' disregard for worker safety, and particularly Plaintiff's plan to provide portable toilet facilities for clean-up workers which Pitts perceived as interfering with his specified area of responsibility.

50.     Immediately following the assault Plaintiff informed BP representative Richard Davis of the altercation, and Mr. Davis simply dismissed it out of hand.

51.     Plaintiff was then approached by an officer of the Pascagoula Police Department who had overheard and witnessed Pitt's attack who then informed Plaintiff that the actions of Mr. Pitts rose to the level of a criminal offense and encouraged Plaintiff to file an affidavit with his police department.

52.     Plaintiff stated his intent to file a report with the Pascagoula Police Department to representatives of Defendants BP, O'Brien's and ES&H at the scene of the assault before he filed the report.

53.     Because he was encouraged to pursue the matter by the witnessing police officer, Plaintiff proceeded to the Pascagoula Police Department and began the process of making a statement to that agency.

54.     Immediately following the assault and Plaintiff leaving to file a report with authorities on the matter, representatives of BP, O'Brien's and ES&H, along with Raymond Pitts, in direct response to Plaintiff's stated intent to participate in the criminal proceedings, jointly decided that, as his joint employers, his employment should be terminated in an egregious violation of state law anti-retaliation statutes.

55.     The following day, Plaintiff was informed by representatives of BP, O'Brien's and ES&H that his employment had terminated, and that he was barred from the BP work site. Plaintiff was then ordered by representatives of BP, O'Brien's and ES&H to turn over property belonging to Defendants that was previously given to him by the Defendant companies to perform his job duties at the work site.

56.     After turning over said property Plaintiff realized that he had inadvertently turned over his own personal property, a USB thumb drive, to BP. He immediately informed Lieutenant Jeffrey Barnes with the Pascagoula Police Department that he needed to retrieve personal property.

57.     Lieutenant Barnes escorted Plaintiff to the job site to retrieve his personal property, where they encountered Ray Pitts. Lieutenant Barnes informed Mr. Pitts that after the judge returned from the extended holiday weekend on the following Tuesday, he would most certainly be arrested.

58.     Upon information and belief, Pitts, along with representatives of BP, O'Brien's and ES&H next met and conspired and colluded together to form an illegal plan to extort Plaintiff into relenting in participating in the criminal investigation of Pitts with the sole purpose to protect the reputation of Defendants from the embarrassment and liability associated with Plaintiff causing the arrest of an employee, agent and representative of BP and O'Brien's and to

12

protect Pitts form injuries associated with said arrest.  ES&H conspired and colluded with Defendants and agreed with the plan to protect the joint interests of Defendants in order to protect its partnership with BP and O'Brien's in the oil spill clean-up venture.

59.     Thus, the day after the collusion and conspiracy to extort Plaintiff, the initial hiring authority for Plaintiff, ES&H, through its owners and most senior management, Trey Boucvalt and Donald Naulty, summoned Plaintiff to a meeting in Lafourche Parish, Louisiana and set in motion the plan to extort Plaintiff when they informed Plaintiff that he was to withdraw his statement to the police.

60.     Boucvalt and Naulty informed Plaintiff that if he did as they instructed, Plaintiff would be allowed to return to work and that his barring from the job site by BP, O'Brien's and ES&H would be revoked.

61.     Having succumbed to Defendants' undue pressure to act against his interests and his rights under the law, Plaintiff begrudgingly asked that the report made to the Pascagoula Police Department be revoked.

62.     After the report of the criminal act was revoked Plaintiff was transferred to ES&H's sister company, TLF, which supplied Plaintiff with token, less profitable, work, for a short amount of time until, in a continuing act of illegal conduct, Plaintiff was terminated again a short time later.

63.     Plaintiff learned from fellow employees at the Pascagoula job site that he continued to be permanently banned from taking part in any oil spill clean-up work through not being hired with any entity on the authority of BP, thus effectively making him "blackballed" in the profession.

64.     Plaintiff, upon learning that his full wages had not been paid by Defendants, made a formal demand to be paid his final wages; however, in a final act of retaliation, Defendants refused to pay the entirety of Plaintiff's earned salary during the time of his employment with Defendants.

## CAUSES OF ACTION

65.     As a direct and proximate cause of the Defendant's acts, Plaintiff suffered the following, but not necessarily exclusive particulars:

### COUNT I
### VIOLATION OF 29 U.S.C. §207
### OVERTIME COMPENSATION

66.     Plaintiff realleges and reavers paragraphs 1 through 65 of the Complaint as if fully set forth herein.   Plaintiff hereby asserts a violation of 29 U.S.C. § 207 overtime compensation against Defendants BP, O'Brien's, ES&H, TLF and Pitts.

67.     From at least May 1, 2010 and continuing until July of 2010, Plaintiff worked in excess of the forty (40) hours per week performing services for Defendants BP, O'Brien's, ES&H, TLF and Pitts as joint employers in the joint effort to perform the essential functions of the oil spill clean-up endeavor for which Plaintiff was not compensated at the statutory rate of one and one-half times Plaintiff's regular rate of pay.

68.     Plaintiff was, and is entitled to be paid at the statutory rate of one and one-half times of Plaintiff's regular rate of pay for those hours worked in excess of forty (40) hours.

69.     At all times material hereto, Defendants BP, O'Brien's, ES&H, TLF and Pitts failed, and continue to fail, to maintain proper time records as mandated by the FLSA as each had the capability to track and log Plaintiff's work hours, yet each failed to do so in accordance with the requirements of the FLSA

70.    Defendants BP, O'Brien's, ES&H, TLF and Pitts' actions were willful and/or showed reckless disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff at the statutory rate of one and one-half times Plaintiff's regular rate of pay for the hours worked in excess of forty (40) hours per weeks when they knew, or should have known, such was, and is due as each was aware of the up to 16 hour days, seven days a week that Plaintiff was working at the job site, yet did nothing to ensure that Plaintiff was properly paid overtime compensation.

71.    Defendants BP, O'Brien's, ES&H, TLF and Pitts have failed to properly disclose or apprise Plaintiff of Plaintiff's rights under the FLSA despite the fact that each had the ability and authority to post the appropriate FLSA information at locations around the job site, yet each failed to do so, in violation of the FLSA.

72.    Due to the intentional, willful, and unlawful acts of Defendants in failing to pay him federally-mandated overtime pay and in failing to keep accurate records of the time Plaintiff worked, Plaintiff suffered and continues to suffer damages and lost compensation for time worked over forty (40) hours per week, plus liquidated damages.

73.    Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 29 U.S.C. §216(b).

74.    At all times material hereto, Defendants BP, O'Brien's, ES&H, TLF and Pitts failed to comply with Title 29 and United States Department of Labor Regulations, 29 C.F.R. §§516.2 and 516.4, by virtue of the management policy, plan or decision Defendants BP, O'Brien's, ES&H, TLF and Pitts made that intentionally compensated  Plaintiff as if Plaintiff was not covered by 29 U.S.C. §§201 through 219.

## COUNT II
## <u>FAILURE TO PAY FINAL WAGES</u>

75.     Plaintiff re-alleges and incorporates by reference Paragraphs 1-74, inclusive.
Plaintiff hereby asserts a claim of Failure to Pay Final Wages against Defendants BP, O'Brien's,
ES&H, TLF and Pitts.

76.     Plaintiff is entitled to the portion of his unpaid final wages he earned prior to his
termination, and which were unrelated to Plaintiff's FLSA claims.

77.     Plaintiff, through undersigned counsel, made a formal demand upon Defendant
ES&H, the entity which regularly issued his paychecks, on August 25, 2010 for payment of the
above-referenced amount.  To date, Defendants have not paid the above-referenced amount and,
therefore, pursuant to Louisiana Revised Statute 23:631 et seq., Plaintiff is entitled to 90 days
penalty wages, attorney's fees, and court costs.

78.     Plaintiff has met the conditions for entitlement to relief against the joint employer
Defendants because wages were due and owing, demand for payment was made where the
employee was customarily paid, at the office of Defendant ES&H; and, the employers did not
pay upon demand.

## COUNT III
## <u>VIOLATION OF LA. R.S. 30:2027</u>

79.     Plaintiff re-alleges and incorporates by reference Paragraphs 1-78, inclusive.
Plaintiff hereby asserts Claims against Defendants BP, O'Brien's, ES&H, TLF and Pitts for
violation of La. R.S. 30:2027

80.     The actions of Defendants BP, O'Brien's, ES&H, TLF and Pitts as set forth above
constitute a violation of law in that they retaliated against Plaintiff in violation of La. R.S.
30:2027, by, among other ways, retaliating against and terminating Plaintiff's employment with

all Defendants through a joint decision because he opposed, objected to, and reported the Defendants practices of violating environmental state laws, rules and regulations. And in particular, Plaintiff's reporting to authorities that the nexus of the assault upon him was directly related to his efforts to comply with OSHA direction to ensure that oil spill workers were working in safe and sanitary conditions, and in particular that Defendants were operating in compliance with federal regulations and state laws with regard to toiletry facilities for the oil spill workers.

81.     Because Defendants BP, O'Brien's, ES&H, TLF and Pitts have committed these acts of retaliation, it is liable unto Plaintiff for his wrongful termination, as well as triple damages multiplied by compensatory damages, lost wages, benefits, reinstatement, attorney's fees, and court costs.

## COUNT IV
## VIOLATION OF LA. R.S. 23:967

82.     Plaintiff re-alleges and incorporates by reference Paragraphs 1-81, inclusive. Plaintiff hereby asserts Claims against Defendants BP, O'Brien's, ES&H, TLF and Pitts for violation of La. R.S. 23:967

83.     The actions of Defendants BP, O'Brien's, ES&H, TLF and Pitts as set forth above constitute a violation of law in that they retaliated against Plaintiff in violation of La. R.S. 23:967, among other ways, by retaliating against and terminating Plaintiff's employment because he opposed, objected to, and reported Defendant Pitts' practices of violating state laws, rules and regulations.  In that specifically, upon learning that Plaintiff intended to, and did in fact travel to the Pascagoula Police Department in order to fill out an affidavit associated with an assault in the workplace, which would lead to the arrest of Pitts, said Defendants conspired and colluded

together to terminate Plaintiff's employment prior to his returning to the job site following his executing an affidavit with the Pascagoula Police Department.

84.     Because Defendant BP, O'Brien's, ES&H, TLF and Pitts, as joint employers have committed these acts of retaliation, it is liable unto Plaintiff for his wrongful termination, as well as compensatory damages, lost wages, benefits, reinstatement, attorney's fees, and court costs.

### COUNT V
### VIOLATION OF MISSISSIPPI STATE RETALIATION LAWS

85.     Plaintiff re-alleges and incorporates by reference Paragraphs 1-84, inclusive. Plaintiff hereby asserts Claims against Defendants BP, O'Brien's, ES&H, TLF and Pitts for violation of Mississippi state common law regarding relation.

86.     The actions of Defendants BP, O'Brien's, ES&H, TLF and Pitts as set forth above constitute a violation of law in that they retaliated against Plaintiff in violation of the wrongful termination claims authorized by McArn v. Allied Bruce-Terminix Co., Inc., 626 So.2d 603, 606 (Miss. 1993).  In particular, Defendants BP, O'Brien's, ES&H, TLF and Pitts retaliated against and terminated Plaintiff's employment because he opposed, objected to, and reported Defendant Pitts' practices of violating state laws, rules and regulations.  In that specifically, upon learning that Plaintiff intended to, and did in fact travel to the Pascagoula Police Department in order to fill out an affidavit associated with a an assault in the workplace, which would lead to the arrest of Pitts, said Defendants conspired and colluded together to terminate Plaintiff's employment prior to his returning to the job site following his executing an affidavit with the Pascagoula Police Department.

87.     The subject retaliation occurred in the state of Mississippi wherein Plaintiff informed agents of Defendants BP, O'Brien's, ES&H, TLF and Pitts that he intended to report

the criminal activity perpetrated by Pitts. Defendants BP, O'Brien's, ES&H, TLF and Pitts met, colluded and decided to terminate Plaintiff's employment in the state of Mississippi and thus the common law of that state is applicable herein.

88.     Because Defendant BP, O'Brien's, ES&H, TLF and Pitts, as joint employers have committed these acts of retaliation, they are liable unto Plaintiff for his wrongful termination, as well as compensatory damages, lost wages, benefits, reinstatement, attorney's fees, and court costs.

**COUNT VI**

**COMMON LAW CLAIM FOR CIVIL CONSPIRACY**

89.     Plaintiff re-alleges and incorporates by reference Paragraphs 1-88, inclusive. Plaintiff hereby asserts the following Common Law/Torts claim against Defendants BP, O'Brien's, ES&H, TLF and Pitts.

90.     The actions of Defendants BP, O'Brien's, ES&H, TLF and Pitts as set forth above constitute a violation of law in that they perpetrated the civil tort of conspiracy which resulted in damage and injury to Plaintiff.

91.     The actions of Defendants BP, O'Brien's, ES&H, TLF and Pitts as set forth above constitute a violation of law in that they perpetrated the civil tort of extortion which resulted in damage and injury to Plaintiff by two acts, first by conspiring and colluding together to deprive Plaintiff of his legal rights which included terminating Plaintiff from his employment because he chose to fill out an affidavit in exercise of his legal right to participate in a criminal action against Pitts.

92.     Defendants further conspired and colluded together to deprive Plaintiff of his legal rights by extorting Plaintiff and exerting undue and illegal pressure upon him in forcing

Plaintiff to withdraw the same affidavit in exercise of his legal right to participate in a criminal action against Pitts in exchange for allowing Plaintiff to return to work.

93.     Because Defendant BP, O'Brien's, ES&H, TLF and Pitts acted in a joint capacity to have committed these illegal acts, they are liable unto Plaintiff jointly and severely for all damages including compensatory damages, lost wages, benefits, reinstatement, attorney's fees, and court costs.

### COUNT VII

### COMMON LAW CLAIM FOR CIVIL EXTORTION

94.     Plaintiff re-alleges and incorporates by reference Paragraphs 1-93, inclusive. Plaintiff hereby asserts the following Common Law/Torts claim against Defendants BP, O'Brien's, ES&H, TLF and Pitts.

95.     The actions of Defendants BP, O'Brien's, ES&H, TLF and Pitts as set forth above constitute a violation of law in that they perpetrated the civil tort of extortion which resulted in damage and injury to Plaintiff.

96.     The actions of Defendants BP, O'Brien's, ES&H, TLF and Pitts as set forth above constitute a violation of law in that they perpetrated the civil tort of extortion which resulted in damage and injury to Plaintiff by conspiring and colluding together to deprive Plaintiff of his legal rights by extorting Plaintiff and exerting undue and illegal pressure upon him in forcing Plaintiff to withdraw the criminal affidavit against Pitts in exercise of his legal right to participate in a criminal action against him  in exchange for allowing Plaintiff to return to work.

97.     This extortion perpetrated by Defendants BP, O'Brien's, ES&H, TLF and Pitts occurred for no other reason than to protect themselves from the embarrassment of Pitts'

impending arrest and from the injuries which would have been inflicted upon Pitts' arrest, trial and conviction.

98.     Because Defendants BP, O'Brien's, ES&H, TLF and Pitts acted in a joint capacity to have committed these illegal acts, they are liable unto Plaintiff jointly and severely for all damages including compensatory damages, lost wages, benefits, reinstatement, attorney's fees, and court costs.

**COUNT VIII**

**<u>COMMON LAW CLAIM FOR ASSAULT</u>**

99.     Plaintiff re-alleges and incorporates by reference Paragraphs 1-98, inclusive. Plaintiff hereby asserts the following Common Law/Torts claim against Defendants BP, O'Brien's, and Pitts.

100.    The actions of Defendants BP, O'Brien's, and Pitts as set forth above constitute a violation of law in that they perpetrated the civil tort of civil assault upon Plaintiff which resulted in damage and injury to Plaintiff.

101.    Plaintiff was assaulted by Pitts in an incident which occurred directly due to an issue that arose out of the course and scope of Pitts' employment with BP and O'Brien's and as such he acted as an agent and employee of both.

102.    Said assault was an intentional act that was perpetrated for the benefit of BP and O'Brien's that causes Plaintiff a reasonable and imminent apprehension of a harmful or offensive contact to which he did not consent.

103.    Pitts was initially hired by O'Brien's, which brought him to the work site for the benefit of Defendants BP and O'Brien's and was compensated by both Defendants in exchange

for his management of BP and O'Brien's ultimate task of undertaking the clean up of oil at or near those locations.

104.    The assault was committed at the work location of BP and O'Brien's and was incidental or directly a result of the responsibilities that Pitts was to perform for BP and O'Brien's and moreover Pitts perpetrated the assault in the course of his employment with BP and O'Brien's with the idea that it would benefit the ultimate goals stated by his employers, BP and O'Brien's and therefore, Pitts, having committed the tort of assault upon Plaintiff, Defendants BP and O'Brien's are additionally liable to it under the doctrine of *respondeat superior.*

105.    Because Defendant BP, O'Brien's, and Pitts, are all responsible for the  illegal acts committed by Pitts, they are liable unto Plaintiff jointly and severely for all damages including compensatory damages, lost wages, benefits, reinstatement, attorney's fees, and court costs.

## ATTORNEY'S FEES

106.     Plaintiff has retained the law firm of J. Forester Jackson, LLC to represent Plaintiff in the litigation and has agreed to pay the firm a reasonable fee for its services.

## CONSENT

107.    Plaintiff's consent to file this First Amended Complaint is evidenced by his signature on the FLSA Consent Form previously filed into the record in this matter.

## JURY DEMAND

108.    Plaintiff demands trial by jury on all issues so triable as a matter of right by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor against

Defendants BP, O'Brien's, ES&H, TLF and Pitts:

a.   Declaring, pursuant to 29 U.S.C. §§2201 and 2202, that the acts and practices complained of herein are in violation of the maximum hour provisions of the FLSA;

b.   Awarding Plaintiff overtime compensation in the amount due him for Plaintiff's time worked in excess of forty (40) hours per workweek;

c.   Awarding Plaintiff liquidated damages in an amount equal to the overtime award;

d.   Awarding Plaintiff triple damages in relation to the Plaintiff's environmental retaliation claims;

e.   Awarding Plaintiff 90 days penalty wages for failure to pay final wages;

f.   Awarding Plaintiff pre-judgment interest.

g.   Awarding Plaintiff compensatory damages including past, present, and future lost wages and/or loss of earning capacity and/or employability

h.   Awarding Plaintiff exemplary damages;

i.   Awarding Punitive damages;

j.   Awarding Plaintiff attorney's fees, costs and litigation expenses; and

k.   Awarding all other appropriate relief as may be just and proper.

Plaintiff respectfully requests that judgment be entered in his favor against Defendants BP, O'Brien's and Pitts for damages which flowed from the assault, including but not limited to:

a.   Awarding Plaintiff compensatory damages including past, present, and future lost wages and/or loss of earning capacity and/or employability

b.   Awarding Plaintiff exemplary damages;

c.      Awarding Punitive damages;

d.      Awarding Plaintiff attorney's fees, costs, litigation expenses, and interest; and

e.      Awarding all other appropriate relief as may be just and proper.

Respectfully Submitted,

**J. FORESTER JACKSON, L.L.C.**

/s/ Jody Forester Jackson
JODY FORESTER JACKSON (#28938), TA
201 St. Charles Avenue, Suite 2500
New Orleans, Louisiana 70170
T: (504) 599-5953
F:  (888) 988-6499
E: jjackson@jackson-law.net
Attorney for Plaintiff
Martin Schlesinger

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing pleading has been served on all counsel of record via the Court's Electronic Filing System and a copy of same has been served on Raymond Pitts via U.S. Mail.

This 3rd day of May, 2011.


<u>/s/ J. Forester Jackson</u>
J. Forester Jackson