UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MARTIN SCHLESINGER | ) | CIVIL ACTION NO.: 2:11-cv-00294 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE: IVAN R. LEMELLE |
| vs. | ) | |
| | ) | MAGISTRATE: |
| | ) | JOSEPH C. WILKINSON, JR. |
| E S & H, INC., TEAM LABOR FORCE, LLC, | ) | |
| O'BRIEN'S RESPONSE MANAGEMENT, INC., | ) | |
| BP AMERICA, INC., AND RAYMOND PITTS, | ) | |
| | ) | |
| Defendants | ) | |

**OPPOSITION TO DEFENDANT BP's MOTION TO DISMISS**

NOW INTO COURT comes Plaintiff Martin Schlesinger who respectfully submits the following opposition to the Motion to Dismiss Claims Against BP Pursuant to Rule 12(B)(6) or, in the Alternative, Motion for a More Definite Statement (the "Motion"). Plaintiff has amended his compliant in compliance with Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, and Plaintiff's complaint, as amended, sets forth a cause of action against Defendant BP. In addition, BP's Motion relies upon inapplicable case law, and amounts to an attempt by BP to impermissibly litigate the merits of Plaintiff's claims via a Rule 12(b)(6) Motion. Because Plaintiff has set forth claims upon which relief be granted in his favor and against BP, BP's request for dismissal of

Plaintiff's claims against it should be denied.  In addition, because Plaintiff's First Amended Complaint complies with all requirements of Rule 8(a) and sets forth a cause of action against BP, BP's request for a more definite statement should be denied.

## LAW AND ARGUMENT

Rule 8(a) of the Federal Rules of Civil Procedure requires a plaintiff to allege a short and plain statement of his claim showing that the plaintiff is entitled to relief.  Pursuant to Rule 8(a), a complaint will be deemed inadequate only if it fails to: (1) provide notice of circumstances which give rise to the claim, or (2) set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist.  *See General Star Indemnity, Co. v. Vesta Fire Ins., Corp.,* 173 F.3d 946, 950 (5th Cir. 1999).  If a complaint is ambiguous or does not contain sufficient information to allow a responsive pleading to be framed, the proper remedy is a motion for a more definite statement under Rule 12(e).  *See* 5 WRIGHT & MILLER, FED. PRACTICE & PROCEDURE §1356 at 590-591.

When reviewing a Rule 12(b)(6) motion, the court must construe all the factual allegations contained in the complaint in the light most favorable to the plaintiff. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Additionally, all facts contained in the complaint must be taken as true. *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002).  Dismissal is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001). This strict standard has been defined by the Fifth Circuit as, "whether in the light most favorable to the plaintiff and with every doubt resolved on his behalf, the complaint states any valid claim for relief."  *Lowery v. Texas A & M University System*, 117 F.3d 242, 247

(5th Cir. 1997), citing 5 WRIGHT & MILLER, FED. PRACTICE AND PROCEDURE §1357 at 601 (1969).

Notably, when considering a motion to dismiss, the court should not be concerned with the likelihood that the Plaintiff will recover on the merits of his claims. Thus, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and `that a recovery is very remote and unlikely.'" *Bell Al. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Finally, dismissal under Rule 12(b)(6) is disfavored and rarely granted.  *See Lowery*, 117 F.3d at 247.

Plaintiff's Complaint (as amended by his First Amended Complaint) meets the requirements of both Rule 8(a) and the *Twombly* and *Iqbal* standard. Accordingly, Defendant's Motion should be denied.

## I.   Defendant Cannot Litigate the Merits of Plaintiff's Claim via a Motion to Dismiss.

Defendant BP devotes much of its 12(b)(6) Motion to an analysis of the various tests used by the courts to determine whether a defendant may be found liable as an employer or joint employer pursuant to federal and state law.  Defendant BP misstates many of these tests in an effort to downplay the impact of its control and authority over Plaintiff.  In addition, and more importantly, Defendant BP attempts to engage in an inappropriate discussion of whether the facts set forth in the original Complaint (as supplemented by the First Amended Complaint) establish liability on the merits of Plaintiff's claims.  An inquiry into the merits of Plaintiff's claim is not appropriate when the court is evaluating a 12(b)(6) motion to dismiss.  *Twombly*, 550 U.S. 544, 556 (2007). For the purposes of this exercise, all of the Plaintiff's allegations are to be accepted as

true. *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002). Accepting Plaintiff's allegations, as set forth in his First Amended Complaint, as true, Plaintiff has clearly set forth cognizable claims for recovery against BP.

## II. Plaintiff Asserts A Recognizable Claim Against BP Under the FLSA.

In order to sufficiently allege liability under the FLSA for failure to pay overtime wages the stated claims that Plaintiff must allege are minimal.

> The requirements to state a claim of a FLSA violation are quite straightforward. The elements that must be shown are simply a failure to pay overtime compensation and/or minimum wages to covered employees and/or failure to keep payroll records in accordance with the Act. See 29 U.S.C. §§ 206, 207, and 215(a)(2) and (5); *Secretary of Labor v. Labbe*, 319 Fed. Appx. 761 (11th Cir. 2008). Contrary to Defendant's assertion, Federal courts in the aftermath of *Twombly* and *Iqbal* have held that extensive pleading is not required in the context of an FLSA claim.[1]

*Hellenberg v. Integrated Deicing Serv. LLC* No. 10-CV-11364 --- F.Supp.2d --- (E.D. Mich., 2011):

---

[1] See e.g., *Mathis v. Quicken Loans, Inc.*, 2007 WL 3227598 (E.D.Mich.2007) (complaint satisfied *Twombly* standard where plaintiffs alleged that defendants are employers as defined by the FLSA, briefly described their job functions and alleged that they routinely worked in excess of forty hours per workweek during the statutory period without overtime compensation); *Uribe v. Mainland Nursery, Inc.,* 2007 WL 4356609, at *2-3 (E.D. Cal. 2007) (plaintiffs who alleged they were non-exempt employees who had not been compensated at the appropriate overtime rates had satisfied the standard set forth in *Twombly* ); *Xavier v. Belfor USA Group, Inc.*, 2009 WL 411559 (E.D. La. 2009) (plaintiffs alleged they routinely worked more than forty hours per week, were not paid overtime compensation, and were covered employees); *Hoffman v. Cemex, Inc.*, 2009 WL 4825224, at *3-4 (S.D. Tex. 2009) (refusing to dismiss FLSA claim under *Iqbal* despite lack of "detailed factual allegations" where plaintiffs alleged that they were classified as non-exempt, that they regularly worked more than 40 hours per week and were not paid overtime rates); *Haskins v. VIP Wireless Consulting*, 2009 WL 4639070, at (W.D. Pa. 2009) (applying *Iqbal*, dismissal of complaint inappropriate where plaintiff alleged that he worked more than 40 hours per workweek and did not receive overtime compensation); *Hawkins v. Proctor Auto Serv. Center, LLC*, 2010 WL 1346416, at * 1 (D.Md.2010) (where plaintiff alleged that he worked more than 40 hours per week without overtime compensation, allegations clearly satisfied *Iqbal*); *Kemp v. Frank Fletcher Companies, Ltd.*, 2010 WL 4096564 (E.D.Ark.2010).

The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. 203(d). This definition stretches "the meaning of `employee' to cover some [workers] who might not qualify as such under a strict application of traditional agency [or contract] law principles." *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 326 (1992)*; United States v. Rosenwasser,* 323 U.S. 360, 363 n. 3 (1945)("the broadest definition [of `employ'] that has ever been included in any one act"). …Plaintiff must set forth allegations that establish that BP would be its joint employer under the "economic realities" test. *Bartels v. Birmingham*, 332 U.S.126, 130 (1947). The crux of the analysis is whether the worker is "economically dependent on the business to which he renders service or is, as a matter of economic [reality], in business for himself." *Id.* (internal quotations omitted).  The determination of an employment relationship "does not depend on . . . isolated factors but rather upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730, (1947).

To sufficiently allege that BP was an employer for the purposes of the FLSA in such a situation as the case at bar, Plaintiff must allege that BP was a joint employer.  The Joint Employment Relationship under the Fair Labor Standards Act of 1938 is defined by 29 C.F.R. § 791.2, which states as follows:

> A single individual may stand in the relation of an employee to two or more employers at the same time under the Fair Labor Standards Act of 1938, since there is nothing in the act which prevents an individual employed by one employer from also entering into an employment relationship with a different employer.  A determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends upon all the facts in the particular case. … [I]f the facts establish that

> the employee is employed jointly by two or more
> employers, i.e., that employment by one employer is not
> completely disassociated from employment by the other
> employer(s), all of the employee's work for all of the joint
> employers during the workweek is considered as one
> employment for purposes of the Act.  In this event, all joint
> employers are responsible, both individually and jointly,
> for compliance with all of the applicable provisions of the
> act, including the overtime provisions, with respect to the
> entire employment for the particular workweek.

Plaintiff's First Amended Complaint successfully alleges that BP was a joint employer for

the purposes of the FLSA.

### A.    The *Silk* Factors Set Forth by the Supreme Court Apply to Plaintiff's Claims Against BP,  not the *Martin* Factors Cited by BP.

BP argues that Plaintiff has failed to sufficiently allege it is an "employer"

within the meaning of the statute because: "Schlesinger has not alleged any facts which

indicate that, as a matter of economic reality, BP was his employer. Schlesinger does **not**

allege that BP hired him, maintained his employment records, set his work schedule, or

paid his wages. Further, there are no allegations that BP had the power to terminate his

employment with ES&H or that BP had any control over hiring decisions or the hourly

rate that Schlesinger was paid."  *See* Motion at p.p. 6-7.  As support for its assertion that

these factors are those Plaintiff must allege to establish that BP is an employer, BP cites

to *Martin v. Bedell*, 955 F.2d 1029 (5th Cir. 1992):  *See* Motion at p. 6.  However, the

factors set forth in *Martin* are derived from the 5th Circuit's decision in *Watson v.*

*Graves*, 909 F.2d 1549 (5th Cir. 1990), a case that addressed the specific factual situation

of whether inmates who were employed by private interests outside the prison could be

considered "employees" of the warden for the purposes of FLSA.  *Watson,* 909 F.2d at

1553.     The application of these factors appears to have been limited to the specific factual situation set forth in *Watson* in which control aspects of the proper test would be muddled by the existence of a type of non-employer control exerted over prisoners.[2]  In non-inmate cases, the Fifth Circuit has followed the factors for determining whether a defendant is an employer that were set forth by the United States Supreme Court in *United States v. Silk*,  331 U.S. 704 (1947).

Thus, per the Supreme Court's directive in *Silk*, the Fifth Circuit has long recognized that when determining whether a defendant corporation is an "employer" or "joint employer" under the FLSA, it must merely examine the employer-employee relationship and the totality of the employment situation must be examined with particular regard to the following five questions: (1) Whether or not the employment takes place on the premises of the company; (2) How much control does the company exert over the employees; (3) Does the company have the power to fire, hire, or modify the employment conditions of the employees; (4) Do the employees perform a `specialty job' within the production line; and (5) May the employee refuse to work for the company or work for others." *Wirtz v. Lone Star Steel Co.*, 405 F. 2d 668, 669 (5th Cir. 1968); *Halferty v. Pulse Drug Co., Inc.*, 821 F. 2d 261 (5th Cir. 1987).  Even the case which is attached to BP's Motion, *Altier v. Worley Catastrophe Response, LLC*, 2011 WL 1791292 (E.D. La. 2011), uses the slightly modified five-factor test from *Silk* in which it cites *Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 327 (5th Cir. 1993): (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and alleged employer; (3) the degree to which the worker's

---

[2]  *Williams v. Henagan*, 595 F. 3d 610 (5th Cir. 2010); *Reimonenq v. Foti*, 72 F. 3d 472 (5th Cir. 1996).

opportunity for profit and loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship.  BP and its attorneys are fully aware that this is the proper test for these circumstances as evidenced by the fact that they argued for the application of these same five-factored tests in their Motion to the court in *Altier* and which is attached hereto as "Exhibit A."

In addition, entities that share control over an individual worker may be deemed joint employers under the FLSA.  *Schultz v. Capital Intern.,* 466 F. 3d 298, 306 (4th Cir. 2006).  The analysis for joint employer status should be performed using the same *Silk* factors as used to determine employer status, with an emphasis on the putative worker's relationship in connection with the employers as a whole, not with an emphasis on which employer satisfies the factors more than the other. *Id*. at 305.  If the facts establish that the employee's employment by one employer (in this case ES&H) is not completely disassociated from the work the employee does for another entity (in this case BP), all of the employee's work for all of the joint employers during the workweek is considered as *one employment* for purposes of the FLSA.  29 C.F.R. § 791.2(a) (emphasis added); *see also Falk v. Brennan,* 414 U.S. 190, 195, 94 S.Ct. 427, 38 L.Ed.2d 406 (1973) (observing in a FLSA case that apartment building maintenance workers were employed by both building management company and building owners). "[A]ll joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA], including the overtime provisions." 29 C.F.R. § 791.2(a).

Pursuant to the 29 C.F.R. § 791.2(b) a "joint employment relationship generally will be considered to exist in situations such as:"

1. Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or

2. Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or

3. Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

Notably, the inquiry into whether a joint employment relationship exists should "take[ ] into account the real economic relationship between the employer who uses and benefits from the services of workers and the party that hires or assigns the workers to that employer." *Ansoumana v. Gristede's Operating Corp.,* 255 F.Supp.2d 184, 193 (S.D.N.Y.2003); *see also Baystate Alternative Staffing, Inc. v. Herman,* 163 F.3d 668, 674-76 (1st Cir. 1998); *Bonnette v. Calif. Health & Welfare Agency,* 704 F.2d 1465, 1469-70 (9th Cir. 1983). The ultimate determination of joint employment must be based upon the "circumstances of the whole activity." *Bonnette,* 704 F.2d at 1470; *see also Barfield,* 537 F.3d 132 (2nd Cir. 2008) (hospital was a joint employer of nurses paid by separate referral agencies). "Of all the factors courts look to in assessing whether another person or entity (apart from the obvious employer) also constituted an "employer" within the meaning of the Act, the authority to direct or control the work of employees is given the greatest weight. *See Falk v. Brennan*, 414 U.S. 190, 195 (1973).

Analyzing Plaintiff's Amended Complaint using the correct factors for determining whether BP was Plaintiff's joint employer for the purposes of the FLSA, it is plain that Plaintiff has sufficiently alleged facts which state a cause of action against BP pursuant to the FLSA. As an initial matter, Plaintiff has sufficiently alleged that BP

exercised sufficient control over his activities so as to constitute an "employer" under the FLSA, which is the factor given the greatest weight.   Particularly, Plaintiff has alleged the following:

1.   Defendant BP is an employer of Plaintiff because it established a command structure and rules of protocol for the sole purpose of placing Plaintiff under the control of all Defendants herein. BP employed, controlled and had determination of the changing and/or continuance of the work status of Plaintiff and similarly situated employees. BP established this protocol explicitly in an effort to share employees, including Plaintiff, so that he and others could effectively work toward the goal of the oil spill clean-up efforts following the Deepwater Horizon oil spill which began on April 20, 2010. At relevant times herein, BP made decisions that directly controlled Plaintiff's employment status with all Defendants. At relevant times herein, BP made decisions that directly controlled Plaintiff's ability to access the work site in Pascagoula, Mississippi. At relevant times herein, BP made decisions that directly controlled Plaintiff's job, work efforts and hours worked in Pascagoula, Mississippi. At relevant times herein, BP issued workplace policies that were to be followed by Plaintiff and similarly situated employees. (First Am. Compl. at ¶ 10.D.)

2.   The Defendants [including BP] each had a part in supervising the extent and nature of Plaintiff's work at the job site and on a daily basis would have open meetings in which representatives of Defendant companies would confer to give out job assignments and institute policies with regard to the spill clean up and activities incidental to same. (*See* First Am. Compl. at ¶ 14.)

3.   Each Defendant [including BP] had individual control over whether the Plaintiff was to spend time working at the job site, and because Plaintiff was working at an hourly rate, each could control his rate of pay. (*See* First Am. Compl. at ¶ 15.)

4.   Each Defendant [including BP] had an interwoven network of record exchange regarding its shared employees. (*See* First Am. Compl. at ¶ 16.)

5.   Each Defendant [including BP] had input and command over shared employees' responsibilities at the job site, including Plaintiff. (*See* First Am. Compl. at ¶ 17.)

6. Each Defendant [including BP] had a hand in issuing Plaintiff credentials that allowed him to work at the job location. (*See* First Am. Compl. at ¶ 18.)

7. Each Defendant [including BP] partook in the institution and distribution of a non-harassment policy, under which they owed a duty to Plaintiff. (*See* First Am. Compl. at ¶ 19.)

8. At all times material hereto, the work performed by the Plaintiff was directly essential to the business performed by all Defendants [including BP]. (*See* First Am. Compl. at ¶ 26.)

9. On July 3, 2010 Plaintiff attended a series of meetings wherein he received instructions that he was subject to and was made to follow BP's new "Non-Harassment" policy for all workers in Pascagoula, Mississippi. BP had chosen to exercise its control over all personnel at the job site by subjecting them to a code of conduct that regulated their social interactions, their job performance, their speech, their handling of employee personal information, and BP thus exhibited the control over all personnel at the job including direct hires of BP, O'Brien's and ES&H. (First Am. Compl. at ¶ 36.)

10. BP and Raymond Pitts along with other direct hires of BP were tasked with enforcing this policy, and thus exhibited the control over all personnel at the job site that rose to the level of control exemplified in an employee-employer relationship of all personnel at the job site, including Plaintiff. (First Am. Compl. at ¶ 37.)

11. Among the proclamations in the subject policy, BP demanded a prohibition on, among other activities, "creating a hostile or intimidating work environment." (First Am. Compl. at ¶ 38.)

12. Immediately after being assaulted by Defendant Pitts Plaintiff informed BP representative Richard Davis of the altercation, and Mr. Davis simply dismissed it out of hand. (*See* First Am. Compl. at ¶ 50.)

13. Plaintiff was informed by representatives of BP, O'Brien's and ES&H that his employment had terminated, and that he was barred from the BP work site. Plaintiff was then ordered by representatives of BP, BP and ES&H to turn over property belonging to Defendants that was previously given to him by the Defendant companies to perform his job duties at the work site. (First Am. Compl. at ¶ 55.)

14. Upon information and belief, Pitts, along with representatives of BP, O'Brien's and ES&H next met and conspired and colluded together to

form an illegal plan to extort Plaintiff into relenting in participating in the criminal investigation of Pitts with the sole purpose to protect the reputation of Defendants from the embarrassment and liability associated with Plaintiff causing the arrest of an employee, agent and representative of BP and O'Brien's and to protect Pitts from injuries associated with said arrest. ES&H conspired and colluded with Defendants and agreed with the plan to protect the joint interests of Defendants in order to protect its partnership with BP and O'Brien's in the oil spill clean-up venture. (First Am. Compl. at ¶ 58.)

15. Plaintiff learned from fellow employees at the Pascagoula job site that he continued to be permanently banned from taking part in any oil spill clean-up work through not being hired with any entity on the authority of BP, thus effectively making him "blackballed" in the profession. (First Am. Compl. at ¶ 63.)

Plaintiff has additionally alleged facts which show that Plaintiff was provided all of the equipment and tools necessary for his job by BP and ES&H and thus, his investment in the activities of BP and ES&H was minor. Specifically, Plaintiff has made the following allegations which support this claim:

1. Each Defendant had a hand in issuing Plaintiff credentials that allowed him to work at the job location. (First Am. Compl. at ¶ 18.)

2. Plaintiff was ordered by representatives of BP, O'Brien's and ES&H to turn over property belonging to Defendants that was previously given to him by the Defendant companies to perform his job duties at the work site. (*See* First Am. Compl. at ¶ 55.)

Similarly, Plaintiff has alleged facts that establish that his ability to profit was controlled by ES&H and BP. Specifically, Plaintiff has alleged the following:

1. Defendant BP is an employer of Plaintiff because it established a command structure and rules of protocol for the sole purpose of placing Plaintiff under the control of all Defendants herein. BP employed, controlled and had determination of the changing and/or continuance of the work status of Plaintiff and similarly situated employees. BP established this protocol explicitly in an effort to share employees, including Plaintiff, so that he and others could effectively work toward the goal of the oil spill clean-up efforts following the Deepwater Horizon oil spill which began on April 20, 2010. At relevant times herein, BP made

decisions that directly controlled Plaintiff's employment status with all Defendants. At relevant times herein, BP made decisions that directly controlled Plaintiff's ability to access the work site in Pascagoula, Mississippi. At relevant times herein, BP made decisions that directly controlled Plaintiff's job, work efforts and hours worked in Pascagoula, Mississippi. At relevant times herein, BP issued workplace policies that were to be followed by Plaintiff and similarly situated employees.  (First Am. Compl. at ¶ 10.D.)

2.   At all times material hereto, Defendants BP, O'Brien's, ES&H, TLF and Pitts failed, and continue to fail, to maintain proper time records as mandated by the FLSA as each had the capability to track and log Plaintiff's work hours, yet each failed to do so in accordance with the requirements of the FLSA.  (First Am. Compl. at ¶ 69.)

3.   Boucvalt and Naulty informed Plaintiff that if he did as they instructed, Plaintiff would be allowed to return to work and that his barring from the job site by BP, O'Brien's and ES&H would be revoked.  (First Am. Compl. at ¶ 60.)

4.   Plaintiff learned from fellow employees at the Pascagoula job site that he continued to be permanently banned from taking part in any oil spill clean-up work through not being hired with any entity on the authority of BP, thus effectively making him "blackballed" in the profession.  (First Am. Compl. at ¶ 63.)

Plaintiff has additionally set forth allegations that establish that he was brought in to supervise the work of others, not to perform a skill or service himself as an independent or subcontractor.  Specifically, Plaintiff has alleged the following:

1.   ES&H was brought by BP to the job site to act in a supporting role that was subservient to BP charge of overseeing the clean-up and in turn ES&H brought Plaintiff to the job site in order to provide safety and security at the job site.  (First Am. Compl. at ¶ 30.)

2.   Plaintiff's role at the job site which had been set forth by all Defendants was to ensure the safety and health of the workers at the job site by primarily overseeing compliance with state and federal laws, including OSHA regulations.  (First Am. Compl. at ¶ 40.)

Finally, Plaintiff has alleged that BP terminated him and banned him from all of its work sites, meaning that the Plaintiff was not hired for a specific period of time specified in a contract.  First Am. Compl. at ¶¶  54 - 63.  Thus, Plaintiff has alleged facts sufficient to state a claim that BP is an employer pursuant to the FLSA.

Whether these facts may be proved with sufficiency for Plaintiff to succeed on the merits of his claims is a question that should not be considered by this Court in deciding this motion.  *Twombly*, 550 U.S. 544, 556 (2007); *Schultz v. Capital Int'l Sec. Inc.*, 466 F.3d 298, 304 (4th Cir.2006); see also *Wirtz v. Lone Star Steel Co.* at 669 ("Whether a person or corporation is an employer or joint employer is essentially a question of fact.")   Because Plaintiff has successfully pled allegations, which set forth a claim against BP under the FLSA, BP Rule 12(b)(6) Motion should be denied.

**B.**     **The Cases Relied Upon by BP are Inapposite.**

The cases relied upon by BP do not change this result.  As was discussed above, BP's reliance on the factors set forth in *Martin* are misplaced.  In *Zheng v. Liberty Apparel Co.*, 355 F. 3d 61 (2nd Cir. 2003) that court used a six factor test for determining the employer-employee relationship:

> (1) whether Liberty's premises and equipment were used for the plaintiffs' work; (2) whether the Contractor Corporations had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to Liberty's process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the Liberty Defendants or their agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the Liberty Defendants. *Id* at 72.

In contradiction with Defendant's entire basis of its argument for dismissing Plaintiff's subject FLSA claims the *Zheng* Court held that the lower court had erred in applying the very same four factored test that BP asks this court to use holding that "the District Court erred when it concluded, based exclusively on the four Carter factors, that Liberty and its principals were not joint employers within the meaning of New York's statutory analogues to the FLSA." *Id.* at 79. That court clarified that those four factors were to be used to "help courts determine if particular workers are independent of all employers" rather than if a joint employer relationship existed. *Id.* at 68.

*Singh v. 7-Eleven, Inc.,* 2007 WL 715488 (N.D. Cal. 2007) is factually distinguishable because the defendant in Singh was a franchisor. That court held stating that the franchisor's "right to run the operation is illusory and that, in reality, the franchise agreement allows 7-Eleven to control the essential areas relating to the terms and conditions of employment." *Id.* at 6. In this case, BP is a joint employer who uses its subcontractors to bring qualified employees to BP's job site to perform services for BP. *Lepkowski v. Telatron Marketing Group, Inc.*, 2011 WL 338062 (W.D. Pa. 2011) was a case decided on the fact that the plaintiff in that case failed to allege any facts which could establish a joint employer relationship. In the instant matter, Plaintiff has alleged multiple facts, which, if proven at trial, would establish that BP is a joint employer under the FLSA. Finally, in *Altier v. Worley Catastrophe Response, LLC,* Judge Barbier used the correct five factor economic realities test advocated by Plaintiff and found in that case that the only factual allegation made to establish a joint employer relationship between the Plaintiff and BP was that BP made the plaintiffs subject to BP's "terms and conditions." *Altier v. Worley Catastrophe Response, LLC*, 2011 WL 1791292 (E.D. La.

2011).  None of the other four factors were addressed.  *Id.* at 6.  In contrast, Plaintiff has set forth over 25 pages of allegations within the First Amended Complaint, which, as was discussed in detail above, sufficiently allege facts that BP is a joint employer under all elements of the *Silk* test.

**III.    Plaintiff Asserts A Recognizable Claim Against BP Under the Louisiana Wage Payment Act.**

In its Motion, BP makes the following assertion:  "to recover… against BP, Schlesinger must establish that (1) BP owed him wages; (2) he demanded payment of those wages from BP; and (3) BP did not pay upon demand.  *Brecht v. Morgan Building Spas*, 2002-2047 (La. 4/23/03); 843 So. 2d 1109, 1112.  This statement is misleading because BP has misstated the actual test set forth in *Brecht* for determining whether Plaintiff has set forth a claim against BP under the Louisiana Wage Payment Act.  BP's statement of the factors necessary to establish a claim under the Louisiana Wage Payment Act would lead this Court to believe that a plaintiff must make a claim for payment to each defendant sought to be held liable under the Louisiana Wage Payment Act.  However, this is not the case.  This statute does not preclude liability as a joint employer and to establish a claim, the plaintiff need only make a claim for payment at the place where he was customarily paid.

Thus, to establish liability under the Louisiana Wage Payment Act, Plaintiff must allege that (1) wages were due and owing; (2) Plaintiff made a demand for payment where he was customarily paid; and (3) his employer did not pay upon demand.  La. R.S. 23:632; *Miller v. Heidi's Inc. of Baton Rouge*, 818 So.2d 959, 963 (La. App. 1 Cir.2002); *Cleary v. LEC Unwired, L.L.C.*, 804 So.2d 916, 923 (La. App. 1 Cir.2001);

*Harvey v. Bass Haven Resort, Inc.*, 758 So.2d 264, 268 (La. App. 3 Cir. 2000); *Richard v. Vidrine Automotive Services, Inc.*, 729 So.2d 1174, 1177 (La. App. 1 Cir.1999); *Hebert v. Insurance Center, Inc.*, 706 So.2d 1007, 1013 (La. App. 3 Cir.1998); *Pokey v. Five L Investments, Inc.*, 681 So.2d 489, 492 (La. App. 1 Cir. 1996).   In his First Amended Complaint, Plaintiff has alleged that at the time he ceased employment with the Defendants, he was owed wages.  (First. Am. Compl. at 64).  Plaintiff asserts that he made a demand for payment at the place where he was usually paid.  (First Am. Compl. at 78).  Finally, Plaintiff alleges that he was not paid.  (First Am. Compl. at 77).  Plaintiff has additionally alleged that BP is his joint employer within the meaning of La. R.S. 23:631 and La. R.S. 23: 632. (First Am. Compl. at 10.D.)

In response, BP implies that the Louisiana Wage Payment Act does not allow for liability as a joint employer.  However, the cases upon which it relies do not support this assertion.  Rather those cases support the proposition that a subcontractor is an independent contractor, not an employee, for the purposes of the Louisiana Wage Payment Act.  *Johnson v. Banner Corp.*, 308 So.2d 534 (La. App. 4th Cir. 1975) (subcontractor who asserted lien against property was an independent contractor, not an employee); *Beaty v. Colgrove Const. Co.*, 420 So.2d 1271, 1272 (La. App. 3d Cir. 1982) (sub-contractor sought payment via a lien and never asserted defendant was his direct employer).  In each of those cases, the Plaintiffs were admittedly subcontractors by the very fact that they were attempting to assert liens, and thus independent contractors and not employees.  Here Plaintiff is not a subcontractor.  He was supplied by another entity to BP in order to fill out BP's workforce that was immediately necessitated by the subject oil spill and BP's resultant responsibilities for clean-up.  The cases do not stand for the

proposition that more than one entity cannot be an "employer" pursuant to Louisiana law. BP's arguments also ignore the Louisiana Supreme Court's true test for an employer-employee relationship when an allegation is made that a plaintiff is somehow not a true employee:

> The law further recognizes that inquiry to determine whether a relationship is that of independent contractor or that of mere servant requires, among other factors, the application of the principal test: the control over the work reserved by the employer. In applying this test it is not the supervision and control which is actually exercised which is significant, the important question is whether, from the nature of the relationship, the right to do so exists. Amyx v. Henry & Hall, ibid. […]
>
> This right to terminate the relationship without cause, where no term of employment is prescribed, is characteristic of the master and servant or employer-employee relationship. The right is at the same time antagonistic to the independent contractor relationship. See La.Civil Code. art. 2746; Pitcher v. United Oil & Gas Syndicate, 174 La. 66, 139 So. 760 (1932); Bell v. Albert Hanson Lumber Co., Ltd., 151 La. 824, 92 So. 350 (1922).

*Hickman v. Southern Pacific Transport Company*, 262 So. 2d 385 (La. 1972). *See also Glover v. DIVING SERVICES INTERN,* 577 So. 2d. 1103 (La. 1 Cir. 1991) (applying the *Hickman* analysis to Louisiana Wage Payment Act).

In an attempt to advance its FLSA argument BP does not even allege that Plaintiff is an independent contractor or subcontractor, only that ES&H is its independent contractor. However, if that is not the allegation, it is unclear what else it is alleging Plaintiff to be. Because Plaintiff has alleged facts, which if proven at trial, show that BP had the right to control Plaintiff, said allegations constitute a claim pursuant to the Louisiana Wage Payment Act, thus BP's motion to dismiss this claims should be denied.

**IV.   BP is Plaintiff's Employer for the Purposes of Plaintiff's Retaliation Claims.**

- 18 -

BP asserts that Plaintiff cannot state a cause of action against it for his retaliation claims because BP is not an employer for the purposes of the anti-retaliation statutes relied upon by Plaintiff.  BP pulls its definition of the term "employee" from Louisiana's law governing who is an employer for the purposes of anti-discrimination claims.  Per BP, a party may only be an "employer" for the purposes of the anti-retaliation statutes if it meets the definition found in La. R.S 23:302. However the definition found in this section of the law defines an employer for the specific purpose of Louisiana's anti-discrimination statutes.  BP sites to *Langley v. Pinkerton*, 220 F.Supp.2d 575 (M.D. La. 2002) for the proposition that the anti-discrimination statute's definition should apply to Plaintiff's claims asserted under the Louisiana Whistleblower Statute. However, although the court in *Langley* did rotely apply the anti-discrimination statute definition to the plaintiff's claims made pursuant to the Whistleblower Act, Plaintiff submits that *Langley* is not instructive, primarily because the plaintiff in *Langley* did not assert that the defendant seeking dismissal was an employer for the purposes of the whistleblower statute.   220 F.Supp.2d at 580.   Moreover, the primary claims to be decided in *Langley* arose under the anti-discrimination statutes, not the Louisiana Whistleblower Statute.  *Id*.  When analyzing whether a defendant is an employer pursuant to the Louisiana Whistleblower Statute, "the most important element to be considered is the right of control and supervision over an individual."  *Guy v. Boys and Girls Club of Southeast Louisiana*, 2005 WL 517503 (E.D. La. 2005) (rejecting argument that La. R.S. 23:302 definition of "employer" applies to analysis sunder Louisiana Whistleblower Statute).  Thus, this court should analyze the relationship between BP and Plaintiff under the general "control" test for employment.

Like Louisiana law, control is the cornerstone for determining whether a defendant is an employer under Mississippi law for the purposes of Plaintiff's *McCairn* anti-retaliation claim. *Sun Vista, Inc. v. Dept of Employment Sec.* 52 So. 3d 1262 (Miss. App. 2011). Under Mississippi law, the court should consider the following factors in the determination of whether a party is an employer:

1. The extent of control exercised over the details of the work;

2. Whether or not the one employed is engaged in a distinct occupation or business;

3. The skill requirement in the particular occupation;

4. Whether the employer supplies the tools and place of work for the person doing the work;

5. The length of time for which the person is employed;

6. The method of payment, whether by the time or by the job;

7. Whether or not the work is part of the regular business of the employer.

*Id*. at 1267. "The primary factor is the right to or degree of control." *Id*.

Plaintiff has alleged that BP is his employer due to the control BP exercised over him, including BP terminating him. Plaintiff has also alleged he was threatened and harassed because of his efforts to ensure that sufficient sanitary facilities were in place for the workers at BP's job site and that he was ultimately terminated for his efforts to ensure that such facilities were in place.   The provision of appropriate sanitary facilities was to ensure that the jobsite was compliant with various OSHA requirements related to portable toilet facilities being placed for the clean-up workers. Without those facilities, Defendants would be in violation of the Clean Water Act. *See*

- 20 -

*e.g.,* 26 U.S.C. 1362.[3]   Ironically, even though BP terminated Plaintiff due to his opposition to and reporting of Pitts's assault and his efforts to ensure OSHA and Clean Water Act compliance, BP asserts that it did not have sufficient control over Plaintiff to constitute being an "employer."   BP has done precisely what the Mississippi and Louisiana anti-retaliation laws at issue proscribe: it has acted to terminate the Plaintiff due to Plaintiff's disclosure and reporting of an assault and his insistence on keeping the job site in compliance with the Clean Water Act and OSHA regulations.   BP cannot now hide behind an inapplicable definition of the term "employer" to avoid liability for its actions.

Plaintiff has alleged that BP is his employer for the purposes of his anti-retaliation claims.   Whether those claims may be proved with certainty at the trial of this matter is a question as to the merits of Plaintiff's claims.   Such an inquiry is inappropriate at this time. Thus, BP's motion to dismiss should be denied.

**V.     Plaintiff has Sufficiently Alleged BP is Liable to Him for the Torts of Conspiracy and Extortion.**

BP asserts that Plaintiff has not properly alleged a claim of "civil conspiracy" against BP because "civil conspiracy" is not an actionable tort under Louisiana law.   However, BP's argument is misleading.   Article 2324 provides that "he

---

[3]       Human biological materials are considered "pollutants" under the Clear Water Act.   *See also Concerned Area Residents for Env't v. Southview Farm,* 34 F.3d 114, 117 (2d Cir.1994) (liquid manure spread on farm fields met definition of pollutant as it was "solid waste, ... sewage, ... biological materials, ... and agricultural waste discharged into water") (internal quotation marks and citation omitted); *United States v. Plaza Health Labs., Inc.,* 3 F.3d 643, 645 (2d Cir.1993) (glass vials of human blood placed into river were "biological materials"); *National Wildlife Fed'n v. Consumers Power Co.,* 862 F.2d 580, 583 (6th Cir.1988) ("live fish, dead fish and fish remains" discharged into Lake Michigan after live fish were pulled through dam's turbines "are pollutants within the meaning of the CWA, since they are biological materials"); *United States v. Frezzo Bros.,* 461 F.Supp. 266, 269-70 (E.D.Pa. 1978), *aff'd,* 602 F.2d 1123 (3d Cir.1979) (runoff from pile of "mushroom compost" was discharge of "sewage" and "biological materials").

who conspires with another person to commit an intentional or willful act is answerable *in solido* with that person for the damage caused by such act." Thus, although the concept of "civil conspiracy" may not be actionable in and of itself, a cause of action lies for civil conspiracy based upon the *intentional tort* the conspirators agreed to commit and committed in whole or in part causing plaintiff's injury. *See New Orleans Jazz & Heritage Foundation, Inc. v. Kirksey*, 40 So.3d 394, 408 (La. App. 4 Cir. 2010). Thus while BP may be technically correct in its assertion that a claim of conspiracy alone cannot stand, when the claim for conspiracy is coupled with an allegation that the defendant has conspired with others to commit an intentional tort which caused the plaintiff harm, a cause of action has been stated. *See Rosso v. Conoco, inc.* 828 So. 2d 546, 551-52 (La. 2002) ("The actionable element in a claim under this Article is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetrate and which they actually commit in whole or in part.").

Plaintiff has alleged that BP conspired with the other defendants to terminate Plaintiff from the work he performed on the BP job site, to bar him from all BP job sites and to then offer him his position back if he would agree to drop all charges related to the harassment and threats made against him due to his efforts to provide sanitary services to the workers at the BP job site. (First. Am. Compl. at 54 – 55, 58 – 63, 91 – 97). Extortion is a recognized civil claim pursuant to La. Civil Code Art. 2315. *Brauninger v. Ducote*, 381 So. 2d 1246 (La. 4 Cir. 1979) Whether these allegations may be proved with certainty is a question that gets to the merits of Plaintiff's claims. An inquiry into the merits of Plaintiff's claims is inappropriate during a Rule 12(b)(6) motion

analysis.  Because Plaintiff has alleged facts, which if proven at trial, constitute a claim for conspiracy, BP's motion to dismiss these claims should be denied.

**VI.    Plaintiff has sufficiently Alleged that BP is Liable to it Under the Doctrine of _Respondeat Superior._**

It is the *right* of control of the time and physical activities in the other party and the existence of a close relationship between the parties which determine that one is a servant. *Blanchard v. Ogima*, 215 So. 2d 902 (La. 1968).  BP asserts, by citing self-servingly selective portions of Plaintiff's Amended Complaint, that Plaintiff has failed to allege any facts, other than conclusory statements, that would suggest that Defendant Pitts was subject to BP's control.  This statement is patently false.  Plaintiff has made the following allegations which establish that Pitts was subject to BP's control:

1.  Pitts was individual initially retained for employment by O'Brien's… **and that by virtue of their regularly exercised authority, both O'Brien's and BP are employers of Pitts**.  First Am. Compl. at ¶ 9.

2.  Defendant Pitts was high-ranking agent of BP who was a direct hire …**brought to the work site in Pascagoula, Mississippi who exerted the same control over Plaintiff as Defendant O'Brien's as an agent of BP and O'Brien's.**  At relevant times herein, Pitts submitted to and partook in the chain of command and operational **protocol established by BP so that all Defendants could exercise control over Plaintiff as an employee of all Defendants**. At relevant times herein, Pitts made decisions that directly controlled Plaintiff's employment status with all Defendants. At relevant times herein, Pitts made decisions that directly controlled Plaintiff's ability to access the work site in Pascagoula, Mississippi. At relevant times herein, Pitts made decisions that directly controlled Plaintiff's job, work efforts and hours worked in Pascagoula, Mississippi.  First Am. Compl. at ¶ 10E.

3.  BP **and its direct hires, including Pitts,** were responsible for controlling the oil spill clean-up work, and thus necessarily were required to manage every aspect of controlling personnel, including Plaintiff at the Pascagoula, Mississippi location. First Am. Compl. at ¶29.

4.   At all times material hereto P**itts was an employee and agent of both BP and O'Brien's** with the authority, both actual and apparent, to act on their behalves, thus making BP and O'Brien's responsible for his acts pursuant to the theory of *respondeat superior*. First Am. Compl. at ¶21.

5.   On July 3, 2010 Plaintiff attended a series of meetings wherein he received instructions that he was subject to and was made to follow BP's new "Non-Harassment" policy for all workers in Pascagoula, Mississippi.  BP had chosen to exercise its control over all personnel at the job site by subjecting them to a code of conduct that regulated their social interactions, their job performance, their speech, their handling of employee personal information, and BP thus exhibited the control over all personnel at the job including direct hires of BP, O'Brien's and ES&H. First Am. Compl. at ¶36.

6.   O'Brien's and **Raymond Pitts along with other direct hires of BP** were tasked with enforcing this policy, and thus exhibited the control over all personnel at the job site that rose to the level of control exemplified in an employee-employer relationship of all personnel at the job site, including Plaintiff. First Am. Compl. at ¶37.

7.   Strikingly, immediately following that meeting in which the policy was implemented, **Defendant Pitts, acting on behalf of BP** and O'Brien's approached Plaintiff and intimidated Plaintiff for the benefit of BP and O'Brien's. First Am. Compl. at ¶39.

8.   Plaintiff was assaulted by Pitts in an incident which occurred directly due to an issue that **arose out of the course and scope of Pitts' employment with BP** and O'Brien's and as such he acted as an agent and employee of both. First Am. Compl. at ¶101.

9.   Pitts was initially hired by O'Brien's, which brought him to the work site for the benefit of Defendants BP and O'Brien's and was **compensated by both Defendants in exchange for his management of BP and O'Brien's ultimate task** of undertaking the clean up of oil at or near those locations. First Am. Compl. at ¶103.

10. The assault was committed at the work location of BP and O'Brien's and was **incidental or directly a result of the responsibilities that Pitts was to perform for BP** and O'Brien's and moreover Pitts **perpetrated the assault in the course of his employment with BP** and O'Brien's with the idea that it would **benefit the ultimate goals stated by his employers, BP** and O'Brien's and therefore, Pitts, having committed the tort of assault upon Plaintiff, Defendants BP and O'Brien's are additionally liable to it under the doctrine of *respondeat superior*. First Am. Compl. at ¶104.

11. Because Defendant **BP, O'Brien's, and Pitts, are all responsible for the illegal acts committed by Pitts**, they are liable unto Plaintiff jointly and severely for all damages including compensatory damages, lost wages, benefits, reinstatement, attorney's fees, and court costs. First Am. Compl. at ¶105.

Whether these claims will ultimately be proven with certainty at the trial of this matter gets to the merits of Plaintiff's claims.  Such an inquiry is inappropriate at this juncture. Because Plaintiff has sufficiently alleged his claims, BP's motion should be denied.

### Conclusion

For the reasons discussed above, Plaintiff has set forth recognizable causes of action against BP.   Therefore, BP's Motion should be denied.

Respectfully Submitted,

**J. FORESTER JACKSON, L.L.C.**

/s/ Jody Forester Jackson
JODY FORESTER JACKSON (#28938), TA
201 St. Charles Avenue, Suite 2500
New Orleans, Louisiana 70170
T: (504) 599-5953
F:  (888) 988-6499
E: jjackson@jackson-law.net
Attorney for Plaintiff
Martin Schlesinger

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served on all counsel of record via the Court's Electronic Filing System.

This 31st day of May, 2011.

/s/ J. Forester Jackson
J. Forester Jackson

- 25 -